# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TRAVIS GORDON, MICHAEL ELLERSHAW, and FTP INVESTMENTS, INC<br><br>        Plaintiffs,<br><br>  v.<br><br>EARL L. PHILLIP, ANDREU PHILLIP, EDUARDO OJEDA, JARVIS ADDISON, LAWRENCE HARRIS, III, NEW INNOVATION GROUP CONSULTANTS, LLC, RODOLFO (RUDY) VAZQUEZ ZAYAS, and VICTOR A. SUAREZ MELENDEZ, all d/b/a Leafy Gram<br><br>        Defendants. | Case No. _____ |

## COMPLAINT
**(Jury Trial Demanded)**

NOW COME the Plaintiffs, by and through their undersigned counsel, and for their Complaint against the Defendants hereby allege as follows:

### The Parties

1. Travis Gordon ("Gordon") is a citizen and resident of Stanly County, North Carolina.

2. Michael Ellershaw ("Ellershaw") is a citizen and resident of Iredell County, North Carolina.

3. FTP Investments, Inc. ("FTP") is a corporation organized and existing under the laws of the State of North Carolina with a principal place of business in Stanly County, North Carolina. Ellershaw and Gordon are both shareholders in FTP.

4. Upon information and belief, the Defendant New Innovation Group Consultants, LLC ("NIGC") is a corporation organized under the laws of the territory of Puerto Rico with a principal place of business in Pinellas County, Florida and in Cayey Puerto Rico.

5. Upon information and belief, the Defendant Earl L. Phillip is a citizen and resident of St. Johns County, Florida and holds himself out as the CEO and President of NIGC.

6. Upon information and belief, the Defendant Andreu Phillip is a citizen and resident of Buncombe County, North Carolina and is the son of Earl Phillip. Upon information and belief, Defendant Andreu Phillip was on a "Board of Advisors" for Defendant NIGC and a venture called "Leafy Gram" discussed in more detail herein.

7. Upon information and belief, the Defendant Lester Phillip is a citizen and resident of Madison County, Alabama and is the brother of Earl Phillip and held himself out as "President of Leafy Gram" and was represented in the Prospectus (discussed below) as bringing experience in global business to the venture.

2

Case 1:21-cv-00029-LCB-LPA   Document 1   Filed 01/11/21   Page 2 of 18

8. Upon information and belief, Defendant Edgardo Luis Ojeda ("Ojeda") is a citizen and resident of Philadelphia County, Pennsylvania and at relevant times herein held himself out as an Executive Vice President and Chief of Security for NIGC.

9. Upon information and belief, Defendant Jarvis Addison ("Addison") is a citizen and resident of Newton County, Georgia, and at relevant times herein held himself out as "Executive VP and Chief Technology Officer for Leafy Gram" and was represented in the Prospectus as having ability to develop mobile apps.

10. Upon information and belief, Defendant Lawrence Harris, III ("Harris") is a citizen and resident of Duval County, Florida and at relevant times herein held himself out as "Executive VP and Chief Privacy Officer for Leafy Gram" and was represented in the Prospectus as providing experience to assist with operational funds, programs and projects.

11. Upon information and belief, Defendant Rodolfo (Rudy) Vazquez Zayas ("Zayas") is a citizen and resident of Puerto Rico and holds himself out as the COO and Executive Vice President of NIGC and the Prospectus provided to Plaintiffs states that Defendant Zayas was "chosen to lead operations."

12. Upon information and belief, Defendant Victor A. Suarez Melendez ("Melendez") is a citizen and resident of Puerto Rico and holds himself out as

an Executive Vice President of NIGC and as legal counsel as part of the management team.

13. This action concerns the unregistered offering and unregistered broker activities of securities through solicitation of investments to be used for the purpose of implementing a social media and communication platform under the name "Leafy Gram" to be marketed to cannabis users.

14. The Defendants represented that the Plaintiffs' investment of funds would be in exchange for issuance of shares in both NIGC and another entity called "Leafy Gram" which was purportedly to be formed under the laws of Florida and Puerto Rico.

15. No entity called "Leafy Gram" was ever organized or registered in Florida or Puerto Rico, nor (upon information and belief) anywhere else.

16. Leafy Gram is listed as a d/b/a owned by Defendants Earl Phillip and NIGC in the State of Florida.

## Jurisdiction and Venue

17. This action arises out of solicitation for the offer and sale of unregistered securities by the individual defendants and NIGC to Plaintiffs in the State of North Carolina.

18. Defendants have, directly or indirectly, made use of the means of instrumentalities of interstate commerce and of the mails in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

19. This Court has jurisdiction over this action and venue is proper in this Court pursuant to 15 U.S.C. §77v based on transactions, acts, practices and courses of conduct constituting violations of federal securities laws occurring within this District.

20. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims arising under State law, including claims under the North Carolina Securities Act, N.C.G.S. §78A-1 *et seq.*

## Factual Background

21. In or about November of 2019, Plaintiff Travis Gordon was contacted in North Carolina by Defendant Earl Phillip on the telephone inquiring about Gordon's interest in investing in a venture that would entail a social media and communication app for cannabis users and would be marketed under the name "Leafy Gram".

22. In the November 2019 call, Defendants Earl Phillip, represented that the venture was a "sure thing", that it would generate millions of dollars of advertising revenues and that it would start generating dividends within four months of the launch of the app. Defendant Earl Phillip did not disclose any risk in the investment.

23. Defendant Earl Phillip indicated during that call that he wanted Plaintiffs Gordon to talk to individuals involved in the Leafy Gram venture and NIGC to show that it was legitimate and was going to be successful.

24. Defendants Harris, Addison, Lester Phillip, and Ojeda thereafter called Plaintiff Gordon (who was in North Carolina) in November of 2019 and discussed the nature of the investment, their role in the venture, and to express confidence in Earl Phillip. Defendant Earl Phillip was also on each of these calls. These calls took place between November 8 and November 22, 2019.

25. Defendants Earl Phillip and Jarvis Addison represented to Plaintiff Gordon in these November 2019 calls that Defendant Addison had a background in development of web apps and that they needed funds in order to pay Defendant Addison to develop the app, and NIGC and/or Leafy Gram were to own said app.

26. On or about November 11, 2019, Defendant Earl Phillip emailed Plaintiff Gordon a prospectus ("Prospectus") which included the following information:

    a. The Prospectus provided a description of the project, an analysis of the cannabis industry market, and setting forth a marketing plan to reach cannabis users;

    b. The Prospectus set forth an analysis of the revenue potential and projected advertising revenue exceeding $100,000,000.00 annually;

    c. The Prospectus forecast that return on investment would be generated within 4-6 months of introduction of the product and

6

result in payment of dividends and a return when the Leafy Gram product was sold

    d.    The Prospectus identified the management team (including *inter alia* the individual Defendants herein) and described their credentials, emphasizing their experience in the military, government and business.

27. The Defendants' Prospectus also made a "Funding Request" soliciting investments to fund "startup budgetary cost[s]" for creating software, opening offices, marketing, compliance, consultants, operational expenses and other needs.

28. The Prospectus did not make any disclosures of risks nor of remuneration to management, nor did it state the terms of the offering.

29. The Prospectus did not indicate whether there was a cap on investments. At various times thereafter, spreadsheets were circulated indicating certain funding levels were "closed" and only higher dollar minimum investments were available. Upon information and belief, during the time that the Plaintiffs invested, there was no cap on the amount that could be raised through the offering

30. On November 22, 2019 Plaintiffs Gordon and Ellershaw invested $20,000 with Defendants pursuant to a contract entitled "Investment into Leafy Gram" pursuant to an agreement indicating a return on investment of 1% of net profits up to $1,800,000.00 and quarterly dividend payout.

7

Case 1:21-cv-00029-LCB-LPA   Document 1   Filed 01/11/21   Page 7 of 18

31. Plaintiffs Gordon and Ellershaw advised Defendant Earl Phillip that they would each be putting up the funds for the investment and $20,000.00 investment made in November was comprised of $10,000.00 each from these Plaintiffs.

32. Defendant Earl Phillip advised Plaintiffs Gordon and Ellershaw that he would only use Plaintiff Gordon's information on the paperwork because he didn't want to involve more names in the investment.

33. Defendant Earl contacted Gordon in December of 2019 and indicated a need for additional funding to cover operational costs. In response to that request, Plaintiffs Gordon and Ellershaw made three payments of $1000.00 each on December 24, 27 and 30 in 2019 for a total of an additional $3000.00.

34. On or about January 4, 2020, Plaintiffs Gordon and Ellershaw travelled to Florida to meet with Defendants Earl Phillip, Andreu Phillip, Lester Phillip, Addison, Ojeda and Harris. At the meetings, these Defendants spoke of, among other things, the plan for the marketing and launch of the app and the anticipated earnings which were to be in the many millions of dollars.

35. On January 10, 2020, Plaintiff Gordon executed an agreement on behalf of Plaintiff FTP to invest an additional $300,000.00 in exchange for a "Minority Investor" position which would entitle Plaintiff FTP to "10% of Net Profits" and quarterly dividend payments (the "January 10 Agreement").

36. Plaintiff Gordon was advised by Defendant Earl Phillip that the $23,000 previously invested would not count towards the $300,000 investment.

37. The January 10 Agreement reflected that FTP owns 1 share of "Leafy Gram" and 1 share of NIGC.

38. No executed share certificates have been issued to any of the Plaintiff, although an unsigned share certificate dated November 22, 2019 reflecting ownership of 1 share of NIGC by Plaintiff Gordon was emailed to Plaintiff Gordon by Defendant Earl Phillip.

39. On January 10, 2020, Plaintiff Gordon remitted $60,000.00 on behalf of Plaintiff FTP pursuant to the January 10 Agreement as partial payment of the $300,000 investment.

40. On January 26, 2020, Plaintiffs Gordon and Ellershaw met with Defendants Earl Phillip and Addison in Concord, North Carolina to further discuss the investment, how the app would work, and why it would be marketable.

41. On May 5, 2020, Defendant Earl Phillip emailed Plaintiff Gordon a amended agreement which was backdated to January 10, 2020 setting forth new and different terms, namely that the investment of $300,000.00 in exchange for a "Minority Investor" position would entitle Plaintiff FTP to "15 Shares of Leafy Gram" and quarterly dividend payments (the "May 5 Agreement").

9

42.     On May 22, 2020, Plaintiffs Gordon and Ellershaw met in Charlotte North Carolina with Defendants Earl Phillip, Lester Phillip, Andreu Phillip and someone who, upon information and belief was a nephew of Defendant Earl Phillip who had also invested in the venture.  Another prospective investor participated in the meeting as well, and the parties further discussed the nature of the investment.

43.     Plaintiffs invested a total of $293,000.00 in the Leafy Gram venture by payments made on the following dates, some of which were sent by wire to an account designated by Defendant Earl Phillip and others by check mailed to Defendant Earl Phillip payable to Defendant NIGC.

```
11/22/2019   $20,000
12/24/2019    $1000
12/27/2019    $1000
12/30/2019    $1000
 1/10/2020   $60,000
 1/17/2020   $30,000
 1/21/2020   $30,000
 1/27/2020   $30,000
  3/2/2020   $30,000
 3/12/2020   $20,000
  4/8/2020   $15,000
 4/22/2020    $7500
  5/7/2020   $37,500
 7/10/2020    $5000
 7/21/2020    $5000
```

44.     Due to the pandemic, in or about August of 2020, the Plaintiffs Gordon and Ellershaw expressed concern to Defendant Earl Phillip about putting more funds in the venture.  They had a balance of $30,000.00 left on the $300,000.00 investment after remitting the foregoing payments, as Plaintiffs

had been advised that the initial $23,000.00 would not count toward the $300,000.00.

45. In response to Plaintiffs' concerns, Defendant Earl Phillip indicated that he would grant the promised interests in the NIGC and Leafy Gram(8 million shares) for the $293,000.00 that had been remitted despite the lack of payment of the remaining $30,000.00. Defendant Earl Phillip promised to remit a revised contract to that effect, but never did so.

46. Later, on or about November 3, 2020, when Gordon asked for an updated contract, Defendant Earl Phillip indicated that he would grant the promised interests in the NIGC and Leafy Gram for the $293,000 payment despite the lack of payment of $30,000.00, but would cap the return on investment. Defendant Earl Phillip advised that three options were on the table: (1) pay an additional $7,000 dollars for uncapped shares; (2) accept the prior offer for issuance of shares in exchange for the $293,000.00 that had been remitted and have shares with a capped value; or (3) Plaintiffs could get their $293,000.00 back.

47. Throughout the parties' dealings, Defendant Earl Phillip represented that he was meeting with numerous prospective investors in various states to solicit funding for the Leafy Gram venture.

48. Throughout the parties' dealings, Defendant Earl Phillip requested Plaintiffs to connect him with other potential investors and offered a 10% commission if they did so and it resulted in an investment by others.

11

49. Throughout the parties' dealings and in connection with the solicitation made to Plaintiffs, Defendant Earl Phillip represented to Plaintiffs that he would have to confer with Defendants Zayas, Melendez and Ojeda to confirm how to proceed with the transaction and the Leafy Gram ventures, and said Defendants also participated in Zoom calls with Plaintiff Gordon to discuss the venture.

50. No private placement memorandum ("PPM") was provided to Plaintiffs until September 8, 2020.

51. The PPM that was provided on September 8, 2020, including material financial information and risk disclosures which were not previously made available to Plaintiffs.

52. The PPM further reflected that the investment would require a minimum investment of $1,000,000 and would be limited to "accredited investors" of Rule 501(a) of Regulation D promulgated under the Securities Act of 1933.

53. None of the Plaintiffs are "accredited investors" within the meaning of Rule 501(a) of Regulation D, and Plaintiffs were never asked by any of the Defendants for biographical information to confirm whether they were accredited.

54. The PPM reflected paid-in capital as of July 1, 2020. The total paid-in capital was not disclosed to Plaintiffs prior to September 8, 2020.

55. Upon information and belief, the bulk of the paid in capital was the $293,000.00 was comprised of the funds invested by Plaintiffs.

56. The PPM further disclosed de minimis assets as of July 1, 2020 and does not appear to include any value for the Leafy Gram app which had been represented to Plaintiffs as having been purchased from Defendant Addison. This information also was not disclosed to Plaintiffs prior to September 8, 2020.

57. Upon information and belief, no Form D was ever filed by Defendants with the SEC in connection with making a sale of exempt securities.

58. At the time of the solicitation to Plaintiffs, Defendants did not impose sophistication or accreditation standards on investors, nor did it collect biographical information to ascertain whether investors were accredited within the meaning of Rule 501(a) of Regulation D.

59. At various times, Defendants offered referral commissions to Plaintiffs and upon information and belief to others if they promoted the offering or connected Defendant Earl Phillip with prospective investors who provided funding.

60. The minimum investments that could be issued fluctuated substantially throughout the Plaintiffs' discussions with Defendants, and the structure of the investment changed numerous times.

61. On October 13, 2020, Defendant Earl Phillip solicited additional funds from Plaintiff Gordon to cover costs associated with USPTO filings for Leafy Gram, and asked Plaintiff Gordon (and, upon information and belief, numerous others) to purchase additional funds or to connect him with other individuals who may be interested.

62. On November 3, 2020, Defendant Earl Phillip called Plaintiff Gordon to advise that he had been told that the investment structure was not legal.

63. Defendant Earl Phillip stated that because of the illegality of the original structure, they would have to change the investment to grant an 8% interest in NIGC which was supposed to be equivalent to 8 million shares in "Leafy Gram" as a single entity (as opposed to shares in both Leafy Gram and NIGC) purportedly valued at $8,000,000.00, but payout would be capped.. He offered in the alternative to return Plaintiffs' $293,000.00.

64. To date, Plaintiffs have not received the promised shares nor have they received a return of funds despite demanding such return.

65. At no point did Plaintiffs receive any return on their investments.

## FIRST CLAIM FOR RELIEF
### (Sale of Unregistered Securities in Violation of Federal Law)

66. The foregoing allegations are hereby realleged and incorporated herein by reference.

67. As alleged above, Defendants offered and sold securities in the form of shares to be issued in NIGC and a non-existent entity "Leafy Gram" (the "Securities").

68. The Securities were sold to investors in interstate commerce without filing a registration statement with the SEC and without qualifying for any exemption from registration in violation of 15 U.S.C. §77e(a).

69. The Defendant Earl Phillip used instruments of communication through interstate commerce to transmit a Prospectus to Plaintiff Gordon that did not comport with 15 U.S.C. §77j in violation of 15 U.S.C. §77e(b).

70. Each of the Defendants Earl Phillip, Lester Phillip, Andreu Phillip, Edgardo Ojeda, Jarvis Addition, and Lawrence Harris, III participated in the solicitation discussions relating to the offer and sale of the Securities and are directly liable under 15 U.S.C. §77e(a).

71. The solicitation included a proposal to issue shares to Plaintiffs in Defendant NIGC, and Defendant NIGC is also liable under 15 U.S.C. §77e(a).

72. Upon information and belief, the Defendants Earl Phillip, Ojeda, Melendez, Zayas, Addison and Harrison are liable as controlling persons who are liable for the conduct of the other Defendants within the meaning of 15

U.S.C. §77o in that they had the power to control the general affairs of NIGC and the other defendants in the "Leafy Gram" venture at the time of the solicitation and contract with Plaintiffs, and had the requisite power to directly or indirectly control or influence the specific corporate policy which results in the liability for the unlawful sale of unregistered securities.

73. By engaging in the conduct described above, each of the Defendants, directly or indirectly, singly and in concert with each other, has made use of the means or instruments of transportation or communication in interstate commerce to offer to sell or to sell securities when no registration statement had been filed or was in effect as to such securities and when no exemption from registration was applicable.

74. By engaging in the conduct described above, Defendants are jointly and severally liable pursuant to 15 U.S.C. §77l to Plaintiffs for the consideration paid for the Securities with interest thereon and Plaintiffs hereby tender the Securities in exchange for such rescission.

**SECOND CLAIM FOR RELIEF**
**(Sale of Unregistered Securities in Violation of North Carolina Law)**

75. The foregoing allegations are hereby realleged and incorporated herein by reference.

76. The investments offered and sold to Plaintiffs by Defendants constitute securities within the meaning of N.C.G.S. §78A-2(11).

16

77. The Securities were sold to investors in interstate commerce without filing a registration statement as required by Article 4 of Chapter 78A of the North Carolina General Statutes, without qualifying for any exemption from registration under N.C.G.S. §78A-16 or N.C.G.S. §78A-17 and was sold in violation of N.C.G.S. §78A-24.

78. Each of the Defendants Earl Phillip, Lester Phillip, Andreu Phillip, Edgardo Ojeda, Jarvis Addition, and Lawrence Harris, III participated in the solicitation discussions relating to the offer and sale of the Securities in violation of N.C.G.S. §78A-24 and are directly liable under and N.C.G.S. §78A-56(a).

79. The solicitation included a proposal to issue shares to Plaintiffs in Defendant NIGC, and Defendant NIGC also violated N.C.G.S. §78A-24 and is liable under N.C.G.S. §78A-56(a).

80. Upon information and belief, the Defendants Earl Phillip, Ojeda, Melendez, Zayas, Addison and Harrison are liable as controlling persons who are liable for the conduct of the other Defendants within the meaning of N.C.G.S. §78A-56(c) in that they had the power to control the general affairs of NIGC and the other defendants in the "Leafy Gram" venture at the time of the solicitation and contract with Plaintiffs, and had the requisite power to directly or indirectly control or influence the specific corporate policy which results in the liability for the unlawful sale of unregistered securities.

81. Pursuant to N.C.G.S. §78A-56, the Defendants are jointly and severally liable to Plaintiffs for consideration paid for the Securities, together

with interest at the legal rate from the date of payment, costs, and reasonable attorneys' fees, and Plaintiffs hereby tender the Securities in exchange for such rescission.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray the Court as follows:

1. That the Defendants be held jointly and severally liable to Plaintiffs for return of the consideration paid for the Securities and other applicable damages as allowed by law;

2. That the Plaintiffs be awarded prejudgment interest;

3. That the costs of this action, including reasonable attorneys' fees as allowed by law, be taxed to the Defendants;

4. That the Plaintiffs have a trial by jury on all issues so triable;

5. For such other and further relief as the Court deems just and proper.

This the 11th day of January, 2021.

/s/ Pamela S. Duffy
Pamela S. Duffy
N.C. State Bar No. 18329
SHARPLESS McCLEARN LESTER DUFFY, PA
200 South Elm Street, Suite 400
Greensboro, North Carolina 27401
Telephone: (336) 333-6389
pduffy@sharplesslaw.com
*Attorney for Plaintiffs*